

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 6, 2016

**MARIO JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-00492        James C. Beasley, Jr., Judge**

_____

**No. W2015-02498-CCA-R3-PC**

_____

Mario Johnson ("the Petitioner") entered an open guilty plea to five counts of aggravated assault. The trial court sentenced the Petitioner to an effective sentence of thirty years in the Department of Correction. The Petitioner filed a petition for post-conviction relief arguing that he received ineffective assistance of counsel and that he entered his guilty plea unknowingly and involuntarily. The post-conviction court denied relief after a hearing. On appeal, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Mario Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Factual and Procedural Background**

*Guilty Plea Submission & Sentencing Hearings*

As summarized in this court's opinion from the Petitioner's direct appeal, the State set forth the following facts supporting its proof at the guilty plea hearing:

Had the matter gone to trial, the State submits that the proof would have shown that on or about June 23rd of 2010[,] the [Petitioner] . . . confronted a Mr. Terry Ward about a debt for some marijuana that had not been paid.

At that point, the two of them had verbally argued and exchanged blows physically. [The Petitioner] left, came back about a half hour later[,] . . . and fired shots at that residence. There were multiple shots fired.

At that point, there were five people on the porch outside of that house[:] an Odarian Danish[;] Christopher Danish[;] Raphael Danish[;] Terry Ward [;] and a Darren Anderson. They were all standing under the carport. They all ducked for cover and tried to get out of the way.

Odarian Danish, who had just gotten back from the Navy, was hit more than once and was hit in the neck[—][a] through[-]and[-]through shot. He was hit in the chest[,] and he remained in critical condition in the hospital for a period of about two weeks prior to being released.

Odarian Danish did not know the [Petitioner], but [the Petitioner] was identified by Terry Ward, Odarian Danish, [and] Christopher Danish.

State v. Mario Johnson, No. W2012-02566-CCA-R3-CD, 2013 WL 6052873, at *1 (Tenn. Crim. App. Nov. 15, 2013), perm. app. denied (Tenn. Apr. 9, 2014). During the plea colloquy, the Petitioner agreed that he had discussed entering an open plea with trial counsel and that he understood the consequences of such a plea. The Petitioner also agreed that he understood the charges against him. Initially, both trial counsel and the prosecutor stated that they believed that the Petitioner was a career offender. The prosecutor then stated that because some of the Petitioner's convictions were from other states it was possible that the Petitioner was a Range III persistent offender. The trial court explained that, if the Petitioner was found to be a Range III persistent offender, he could be sentenced to ten to fifteen years with a forty-five percent release eligibility for each count. The trial court also explained that, if the Petitioner was found to be a career offender, he could be sentenced to fifteen years with a sixty percent release eligibility on each count. The Petitioner confirmed that he had a right to proceed to trial, to confront the State's witnesses, to testify, and to appeal and that he understood that he was waiving those rights. Additionally, the Petitioner agreed that he was satisfied with trial counsel's representation. The trial court held that the Petitioner knowingly and voluntarily entered his guilty plea.

At the sentencing hearing,[1] the trial court sentenced the Petitioner as a Range III persistent offender to fifteen years for each count of aggravated assault. Id. at *2. The trial court found that the Petitioner had an extensive criminal history and was a dangerous offender and ordered the sentences for count one and count five to be served consecutively. Id. The trial court ordered the sentences for the remaining counts to be served concurrently with count one for an effective sentence of thirty years with a forty-five percent release eligibility in the Department of Correction. Id. This court affirmed the judgments of the trial court. Id. at *4. Our supreme court denied further review.

*Post-Conviction Proceedings*

The Petitioner filed a timely petition for post-conviction relief. At the post-conviction hearing, trial counsel testified that he had practiced criminal defense for twenty-three years and that he had worked at the public defender's office for the last twelve years. Trial counsel stated that he met with the Petitioner many times at court dates and met with the Petitioner in jail after the Petitioner's case was set for trial. Trial counsel noted that, when he first reviewed the Petitioner's case, he believed that the Petitioner could be sentenced as a career offender. Trial counsel testified that the Petitioner was initially not interested in accepting the State's plea offer of nine years for each count to be served concurrently with a thirty-five percent release eligibility.

After the Petitioner was charged with attempted second degree murder in an unrelated case, the State withdrew its original plea offer. The State then offered a plea of twenty years and later offered a plea of twenty-five years. Trial counsel stated that the Petitioner was convinced that he would be acquitted of the attempted second degree murder charge and that the Petitioner gave trial counsel "different details" about the aggravated assault charges. However, trial counsel stated that he did not believe that the Petitioner "had a real [sic] good chance of winning[]" based on the evidence, which included a tape-recorded telephone call. On the tape-recorded call, the Petitioner could be heard telling the call recipient that the individual that the Petitioner shot would not be at his trial. Trial counsel advised the Petitioner that his chances of being acquitted at trial were low, but at this point the Petitioner's case had been set for trial and the State had withdrawn all plea offers. Trial counsel testified that he advised the Petitioner that "the options he had available at that time were to go to trial . . . [in Division 9] where [trial counsel] thought that he did not have a chance to win at all[]" or enter an open plea in Division 10. However, trial counsel stated that he gave this advice while still incorrectly believing that the Petitioner was a career offender. Trial counsel advised the Petitioner

---

[1] A transcript of the sentencing hearing was not included in the record of the post-conviction appeal, but this court's opinion from the Petitioner's direct appeal summarized the Petitioner's sentencing hearing.

about the different ways the trial court could run the sentences, such as consecutively or concurrently.

On cross-examination, trial counsel stated that he believed that the Petitioner's case was not a good case to proceed to trial because of the evidence against the Petitioner, including the victims' testimony and the tape-recorded call. Trial counsel testified that the Petitioner did not accept the State's initial offer of nine years because "he didn't believe that the [victims] were going to show up and testify against him." Trial counsel stated that he advised his clients strongly on whether or not to accept a plea offer, but he never forced his clients to accept plea deals. Trial counsel stated that he advised the Petitioner regarding the positive and negative aspects of accepting a plea offer and also explained the Petitioner's sentencing range. Trial counsel also explained to the Petitioner how having his case transferred to a different trial court would affect his chances at the sentencing stage. Trial counsel relied on his experience practicing in Division 9 to inform the Petitioner that he might receive an effective sentence of seventy-five years as a career offender if the Petitioner proceeded to trial and his case was transferred from Division 10 to Division 9. Trial counsel testified that when the trial court opined that the Petitioner was a Range III persistent offender at the plea submission hearing, trial counsel stated on the record that the Petitioner might want to withdraw his open plea based on that new information.

The Petitioner testified that he did not want the opportunity to proceed to trial if the post-conviction court granted relief but instead he wanted his sentences to be run concurrently. The Petitioner testified that he understood that if the post-conviction court granted him relief he would have the opportunity to proceed to trial, and the State may not make a plea offer. The Petitioner stated that, at the plea submission hearing, trial counsel informed the trial court that the State was no longer making a plea offer but that the Petitioner wanted to enter an open plea, which trial counsel advised against. The Petitioner stated that trial counsel then advised him against proceeding to trial. The Petitioner testified that he did not reject the State's original plea offer but that he told trial counsel he wanted to see if the State would reduce four of the aggravated assault counts to reckless endangerment because "only one guy got hit in the incident." However, the State declined to reduce any of the charges and withdrew its original plea offer. The Petitioner testified that, after he posted bond in the current case, he was charged with other crimes not related to the current charges and returned to custody. The Petitioner stated that the tape-recorded call referred to one victim's decision to drop the charges, not the Petitioner's attempt to "intimidate the witness or tell him not to come to court."

The Petitioner testified that at the Petitioner's report date on August 20, 2012, trial counsel advised against entering an open plea. The Petitioner stated that he was "willing to accept the nine years deal" on that report date, but trial counsel informed him that the

State had withdrawn that offer. The Petitioner testified that trial counsel advised him about how the trial courts in the different judicial divisions might sentence him if he proceeded to trial and was convicted. The Petitioner stated that trial counsel told him that if he entered an open plea in Division 10, he would receive an effective sentence of fifteen years. The Petitioner also testified that trial counsel advised him that if the Petitioner proceeded to trial in Division 9 and was convicted, the Petitioner would likely receive an effective sentence of seventy-five years. The Petitioner agreed that the trial court explained during the plea colloquy that the trial court could run his sentences consecutively or concurrently. The Petitioner also stated that trial counsel informed him that if he proceeded to trial, he "would have no shot of winning."

On cross-examination, the Petitioner stated that he set his case for trial because he "was informed by the victims that they [were] no longer going to prosecute [him]." However, the Petitioner agreed that the victims appeared at his preliminary hearing in general sessions court. The Petitioner also agreed that he had several opportunities from February until May 2011 to accept the State's nine-year offer at report dates, but he did not. The Petitioner agreed that trial counsel advised against entering an open plea on the Petitioner's August 20, 2012 report date because trial counsel had recently received the tape-recorded call and trial counsel wanted to give the Petitioner an opportunity to listen to the recording before entering an open plea. On redirect examination, the Petitioner stated that he would not have entered the open guilty plea if he had understood that he could have received an effective sentence of thirty years.

The post-conviction court noted that, at the sentencing hearing, trial counsel asked the trial court to sentence the Petitioner to ten years on probation. The post-conviction court also noted that both trial counsel and the State believed that the Petitioner was a career offender at the sentencing hearing. The post-conviction court found that the Petitioner "entered his plea freely and voluntarily and [with] full knowledge of what the possibilities were." The post-conviction court implicitly accredited trial counsel's testimony and stated that the Petitioner could have received ten years on probation in a "best case scenario," or the Petitioner could have been sentenced to seventy-five years as trial counsel informed the Petitioner. The post-conviction court found that trial counsel "thoroughly" represented the Petitioner, that the proof against the Petitioner was "overwhelmingly strong[,]" and that the likelihood that the Petitioner would be convicted at trial was "probably extremely high." The post-conviction court concluded that the Petitioner had not met the burden of proof and denied relief. This timely appeal followed.

## II. Analysis

On appeal, the Petitioner argues that "due to the advice [trial counsel] afforded [the Petitioner], [the Petitioner's] plea was involuntar[y] as it was the product of ignorance and incomprehension." The Petitioner also argues that trial counsel's deficient representation prejudiced him because "trial counsel had offered [the Petitioner] assurances that he would not be sentenced to more than fifteen (15) years, and but for those assurances he would not have entered the guilty plea." The State contends that the evidence does not preponderate against the post-conviction court's findings that trial court's performance was not deficient and that the Petitioner's plea was knowing and voluntary.

*Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363,

370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S.52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. Apr. 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

*Unknowing and Involuntary Guilty Plea*

Whether a guilty plea is intelligent and voluntary is a mixed question of law and fact. Jaco, 120 S.W.3d at 830-31. Therefore, in such cases we review the post-

conviction court's findings of fact de novo with a presumption of correctness. Id. The post-conviction court's findings of law are reviewed purely de novo. Id.

Counsel's effectiveness may implicate the requirement that a plea must be entered knowingly and voluntarily, *i.e.*, that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Don Allen Rodgers, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, *i.e.*, that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A reviewing court must examine the totality of the circumstances to determine if a guilty plea was knowing and voluntary. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." Id. at 74.

In the current case, the record supports the post-conviction court's conclusions that the Petitioner failed to prove that trial counsel was ineffective or that the Petitioner had been prejudiced by trial counsel's representation. Trial counsel testified that he advised the Petitioner that he could receive a maximum sentence of seventy-five years as a career offender. While the trial court sentenced the Petitioner as a Range III persistent offender at the sentencing hearing, trial counsel still accurately advised the Petitioner of the maximum sentence that he was facing. See Tenn. Code Ann. § 40-35-112(c)(3). Trial counsel also testified that the Petitioner did not accept the State's initial plea offer of nine years with a thirty-five percent release eligibility for each count to be served concurrently because the Petitioner hoped that the State would reduce some of the charges. Despite the Petitioner's assertions that the victims would not have testified against him at trial, the post-conviction court found that the evidence against the Petitioner was "overwhelmingly strong" and that the likelihood that the Petitioner would be convicted at trial was "probably extremely high." The Petitioner contends that trial counsel assured him the trial court in Division 10 would give the Petitioner an effective sentence of fifteen years; however, the post-conviction court implicitly accredited trial counsel's testimony as truthful. Trial counsel testified that he advised the Petitioner on the different ways that the trial court in Division 10 could run his sentence if the Petitioner entered an open plea in Division 10. The post-conviction court found that trial counsel's performance was not deficient and that the evidence does not preponderate against the post-conviction court's findings. We need not address whether the Petitioner was prejudiced because the Petitioner has not established that trial counsel's performance was deficient. See Finch, 226 S.W.3d at 316.

The plea submission hearing transcript shows that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the Petitioner and accepted the Petitioner's plea as knowingly and voluntarily entered. The Petitioner's wish for reduced charges and his extensive criminal record show that he was familiar with the plea negotiating and sentencing stages of a criminal prosecution. The Petitioner has failed to present more than "conculsory allegations unsupported by specifics" to overcome the presumption that the Petitioner understood the potential sentencing ranges associated with his charges, as he stated at his guilty plea submission hearing. Blackledge, 431 U.S. at 74. The evidence in the record supports the trial court's conclusion that the Petitioner was aware of the sentences he faced whether he was

sentenced as a Range III persistent or career offender and that the Petitioner's guilty plea was knowing and voluntary.  Therefore, the Petitioner is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE